## UNITED STATES DISTRICT COURT

## DISTRICT OF MAINE

| | | |
|---|---|---|
| **GARY AURITT,** | ) | |
| | ) | |
| **PLAINTIFF** | ) | |
| | ) | |
| **v.** | ) | **CIVIL NO. 2:18-cv-471-DBH** |
| | ) | |
| **SHANNON AURITT,** | ) | |
| | ) | |
| **DEFENDANT** | ) | |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

This case grows out of a particularly acrimonious divorce between the parties Gary Auritt and Shannon Auritt.  Maine District Judge Peter Darvin conducted numerous hearings and issued a series of orders in the course of the divorce and child custody proceedings.  His findings on factual issues that were extensively litigated before him have a major influence on the issues now presented in this Court.

Here, Gary Auritt has sued Shannon Auritt, her mother Kathleen Hamilton, and the business Take A Shower LLC for federal unfair competition, federal fraudulent trademark registration, state law unfair competition, and state law trademark dilution.  At the outset, Hamilton and Take A Shower LLC moved to dismiss the lawsuit as it pertained to them for lack of personal jurisdiction.  Hamilton submitted accompanying affidavits.  In opposing the motion, Gary Auritt declined to present any evidence on the issue,[1] and I granted

---

[1] He apparently believed that amending his Complaint was sufficient.  <u>See</u> (ECF Nos. 42, 43).

Hamilton's and Take A Shower LLC's motion to dismiss for lack of personal jurisdiction.

As a result, Gary Auritt's federal lawsuit now is against only Shannon Auritt.  Shannon Auritt no longer has a lawyer and is proceeding pro se.  After extensive advance procedural wrangling, I conducted a bench trial on June 4 and 7, 2021.  These are my findings of fact and conclusions of law.  See Fed. R. Civ. P. 52(a).

FINDINGS OF FACT[2]

1.    Gary Auritt has been in the business of selling showerheads since 1985.  He started his own business, Water Management, in 1989.  The business was very successful.

2.    Gary Auritt has called his showerheads "fire hydrant" since 1991-92.

3.    As the internet emerged, Gary Auritt developed a website under the domain name "takeashower.com" in the mid-to-late '90s.  He had that name stamped on the face plate or flange of the showerheads he sold.  He registered it as a federal trademark in 2014.

4.    The internet portion of the business started "booming" in the early-to-mid 2000s.

5.    Gary Auritt met Shannon Auritt in 2002, and they married in 2007.  Pl.'s Ex. 61, Divorce Judgment at 2, July 21, 2015.

---

[2] At trial, Gary Auritt challenged admissibility of Shannon Auritt's exhibits, but stipulated to authenticity.  Because it was a bench trial and Shannon Auritt was proceeding pro se and wanted to offer 109 exhibits for her case, in the interest of efficiency I admitted all her exhibits *de bene*, reserving ruling on which were relevant.  I have cited specifically Shannon Auritt's exhibits that I have used in reaching my decision.

6.      Shannon Auritt was an IT professional.  During the marriage she provided IT services to Gary Auritt's business.

7.      Shannon Auritt took their children and left Gary Auritt in 2013.  The parties divorced in 2015.

8.      State District Judge Darvin's July 21, 2015, divorce judgment awarded all the showerhead business to Gary Auritt, specifically "the business known as Water Management, doing business as 'takeashower', and the product name 'fire hydrant showerheads' and all assets in and related to said business, including but not limited to the name and website 'takeashower.com.'"  Pl.'s Ex. 61, Divorce Judgment at 18.

9.      In the decree, Judge Darvin found:

> Shannon Auritt committed economic misconduct through a pattern of behavior designed to undermine the business. First, the court finds that Shannon removed specialized tools, equipment and business data and records from the marital home during a time she had exclusive possession of the home.  These tools, equipment and records related to the business were essential to its functioning.  Then, Shannon colluded with her parents to disrupt the business and to diminish the income of the business by setting up a competing company.  These acts were done in a calculated and malicious manner designed to cause financial harm to the business and to Gary Auritt.  The competing business has developed and manufactured the same or very similar products (shower heads), targeted the large customer accounts relied upon by Gary Auritt, and has marketed itself in a manner  purposely designed to cause confusion and to attract customers who would otherwise do business with Gary Auritt's pre-existing business.  The court specifically finds that the testimony of Shannon Auritt regarding the establishment and operation of the business is not credible.

Pl.'s Ex. 61, Divorce Judgment at 19.   As a result, Judge Darvin entered "appropriate injunctive relief as part of this divorce" and enjoined Shannon Auritt

> for a period of three years from the entry of this judgment from assisting, promoting or employment in any business

> that sells or markets shower heads.   This prohibition
> includes, but is not limited to, any action that assists her
> parents, whether as a volunteer or for paid remuneration, in
> marketing, selling, manufacturing, developing or engaging in
> any business that competes with the business awarded to
> Gary Auritt or the sale of shower heads.

Id. at 19-20.

10.    Shannon Auritt or her voice appears in several YouTube videos featuring showerheads.   They are still posted.   They direct the viewer to sellers other than Gary Auritt (highpressureshowers.com or Amazon.com).   Several of them use the term "fire hydrant" and there is a YouTube channel and a website called take-a-shower.com (with hyphens, unlike Gary Auritt's website). According to IT witness Andrew Rosenstein at this trial, all the videos were posted to YouTube July 17, 2015, i.e., before the divorce.

11.    In 2017, Gary Auritt moved in state court to hold Shannon Auritt in contempt of court and to enforce the divorce decree, alleging that Shannon Auritt had violated the divorce judgment's injunction.   Def.'s Ex. 68, Mot. to Enforce; Def.'s Ex. 69, Mot. for Contempt & Mot. to Enforce Hr'g.   After a hearing, Judge Darvin found:

> Gary provided no evidence[3] that Shannon has taken any
> specific action in violation of the injunction since the entry
> of the divorce judgement.   All of the videos were created and
> posted to the Internet before the issuance of the divorce
> judgment.   The videos link to the website and the business
> of TakeaShower [sic] LLC[4] which is owned and operated by
> Shannon's parents.   Other than her appearance as a model
> in the videos (and use of her voice as narrator) there was no
> evidence presented that Shannon works for, has assisted her
> parent's in their business or has received any remuneration

---

[3] Judge Darvin noted that the standard for contempt was "clear and convincing evidence," not always the standard in this federal lawsuit.   But Judge Darvin found "no evidence" and on the motion to enforce, where there was "a lesser standard of proof," he found "no basis" to grant relief.   Def.'s Ex. 70, Order on Post Judgment Mots. for Contempt and to Enforce, Dec. 28, 2017.
[4] The name of the Florida business is actually Take A Shower LLC and I will refer to it by that name hereafter.

> from her parent's business <u>after</u> the entry of the divorce
> action.  There was no evidence that Shannon 'owns' these
> videos or has control over the YouTube channel content.

Def.'s Ex. 70, Order on Post Judgment Mots. for Contempt and to Enforce at 2,

Dec. 28, 2017.

12.    Judge Darvin later denied Gary Auritt's motion to amend the

judgment, finding again that "[t]he videos shown to the court were made <u>prior</u> to

the entry of the divorce judgment and plaintiff failed to establish that defendant

has ownership rights of these videos, or that she controls or directs their usage,

or has any direct ownership rights or involvement with the business owned by

her parents."  Def.'s Ex. 72, Order on Pl.'s Mots. to Alter or Amend Judgment,

Jan. 29, 2018.

13.    The divorce decree's injunctive relief expired July 21, 2018.

14.    Two days earlier, July 19, 2018, Shannon Auritt filed documents

with Florida's Secretary of State's Office Division of Corporations naming herself

as registered agent and chief executive officer in place of her mother for Take A

Shower LLC effective July 23, 2018, *i.e.*, two days after the divorce decree's

injunctive relief would expire.  Pl.'s Ex. 66.  Apparently this change was quickly

amended.[5]  Annual Reports filed thereafter and up until the present list Shannon

Auritt's mother Kathleen Hamilton as chief executive officer and registered agent.

Def.'s Exs. 1-3.

---

[5] Although Gary Auritt introduced the documents changing the chief executive officer and
registered agent to Shannon Auritt, Shannon Auritt introduced the Annual Reports that
thereafter named Kathleen Hamilton as chief executive officer and registered agent.  Neither party
filed amending documents to explain the Annual Reports.  Gary Auritt did say in his trial brief
that Shannon Auritt became registered agent and chief executive officer "if only for a short period
of time."  Pl.'s Trial Br. at 3 (ECF No. 167).

15.    Gary Auritt filed this federal lawsuit on November 14, 2018.

16.    Take A Shower LLC filed a trademark application for "Fire Hydrant Spa Shower Head" on September 22, 2016, on the United States Patent and Trademark Office's Principal Register.   Def.'s Ex. 45, Trademark Application. Gary Auritt opposed the filing but defaulted procedurally.   Def.'s Ex. 18, Trademark Trial and Appeal Board Order, Feb. 11, 2019.   The Patent and Trademark Office registered the mark to Take A Shower LLC on July 9, 2019. Def.'s Ex. 109, Trademark Registration.

17.    Gary Auritt seeks economic damages post-divorce; he is not seeking emotional distress damages.  He did not submit any business records or tax returns of his own or of his business Water Management in support of economic damages.  Instead, he relied on an affidavit of Kathleen Hamilton filed with the motion to dismiss Take A Shower LLC for lack of personal jurisdiction.  (ECF 30-1).  The affidavit detailed the gross sales of Take A Shower LLC and what portion of them were sales to Maine customers over the years 2015-2018.  Gary Auritt testified that the reported 8,201 sales by Take A Shower LLC as reflected in the affidavit cost him between $150,000 and $190,000 in net profits per year.  He testified that he believed the numbers in the affidavit were accurate, "basing my decision on my drop in sales and seeing the—these sales and looking at—since 2015 and looking at my sales in 2015 and seeing how my business has dropped these I believe that these numbers could be accurate in terms of what they are doing in terms of their business based on the amount of sales how my—my business has declined."

## CONCLUSIONS OF LAW

### *Causes of Action*

Gary Auritt charges Shannon Auritt with federal fraudulent trademark registration, federal unfair competition, state law unfair competition, and state law trademark dilution. Neither party has presented any argument or caselaw as to what the elements of the four claims are. I have had to rely entirely on my own research. Hence the delay in issuing this opinion.

### *Fraudulent federal trademark registration, 15 U.S.C. § 1120*

In closing argument, Gary Auritt's lawyer specified that the mark he challenged as fraudulent was "fire hydrant spa shower head" and that he sought a declaratory judgment against Shannon Auritt that the mark was fraudulently filed. Although Gary Auritt offered no testimony or exhibits concerning the federally filed mark, Shannon Auritt's exhibits, admitted during Gary Auritt's direct case, show that the application was filed September 22, 2016, by Kathleen Hamilton and Take A Shower LLC and registered July 9, 2019, after the Trademark Trial and Appeal Board rejected Gary Auritt's opposition. The filing documents make no reference to Shannon Auritt.

"In order to establish a claim of fraud in the procurement of a federal registration, plaintiff must prove the following by clear and convincing evidence: (1) that defendant made a false representation to the PTO regarding a material fact; (2) that defendant knew that the representation was false; (3) that defendant intended to induce the PTO to act in reliance on the misrepresentation; and (4) the PTO was thereby deceived into registering the mark." <u>Bay State Sav. Bank v. Baystate Fin. Servs., LLC</u>, 484 F. Supp. 2d 205,

220 (D. Mass. 2007); see The Money Store v. Harriscorp Fin., Inc., 689 F.2d 666, 670 (7th Cir. 1982) ("clear and convincing evidence" required to show fraud). The state of mind of the person signing the application oath is the key issue.  6 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 31:61 (5th ed. 2021).

Whatever Gary Auritt's suspicions might be about Shannon Auritt's role in her mother's affairs, there is no evidence on this record that Shannon Auritt made a false representation to the PTO during the mark's registration.  The documents reflect only Kathleen Hamilton and Take A Shower LLC as seeking and obtaining the registration.  Gary Auritt has the wrong defendant for the declaratory judgment he seeks.  Judgment must enter for the defendant Shannon Auritt on this claim.[6]

### *Unfair Competition (state and federal) and Trademark Dilution (state)*

Gary Auritt seeks economic damages and injunctive relief for unfair competition and trademark dilution.  But first I must assess the effect of Judge Darvin's various divorce rulings for this federal lawsuit.  That assessment involves the effect of res judicata, specifically issue preclusion.[7]

---

[6] I therefore do not reach the question what effect Gary Auritt's procedural default before the Trademark Trial and Appeal Board should have on this federal lawsuit.  In its February 11, 2019, order, the Trademark Trial and Appeal Board dismissed Gary Auritt's opposition to the mark, ruling he failed "to timely act before the close of his testimony period" and "failed to submit any evidence establishing his common law rights in his pleaded mark, or supporting his asserted claim of likelihood of confusion, and therefore has failed to demonstrate his standing or entitlement to relief on his asserted likelihood of confusion claim."  Def.'s Ex. 18, Trademark Trial and Appeal Board Order at 10.

[7] Both parties seek its benefit—Gary Auritt as to the initial divorce decree; Shannon Auritt as to the later Judge Darvin rulings (she does not use the legal term but that is the import of her pro se arguments).  Neither party has addressed the legal requirements for applying issue preclusion.

I apply Maine law on res judicata in determining the effect of Judge Darvin's state court decisions.  See 18B C. Wright & A. Miller, Federal Practice and Procedure: Jurisdiction § 4469 (2d ed. 2021) ("Federal courts ordinarily honor the res judicata effects of state-court judgments.").  "The fact that a suit raises a federal question or seeks to vindicate federal constitutional rights does not blunt the force of this command . . .  Consequently, state law, with all its wrinkles, applies in deciding the res judicata effect of a state court judgment in a federal court."  Cruz v. Melecio, 204 F.3d 14, 18 (1st Cir. 2000) (citing Montalvo-Huertas v. Rivera-Cruz, 885 F.2d 971, 974 (1st Cir. 1989).

Maine holds that res judicata encompasses both issue preclusion and claim preclusion.  Portland Water Dist. v. Town of Standish, 2008 ME 23, ¶¶ 7-9, 940 A.2d 1097.  This case involves issue preclusion.  The United States Supreme Court has been clear on how this works:

> Sometimes two different tribunals are asked to decide the same issue.  When that happens, the decision of the first tribunal usually must be followed by the second, at least if the issue is really the same.  Allowing the same issue to be decided more than once wastes litigants' resources and adjudicators' time, and it encourages parties who lose before one tribunal to shop around for another.  The doctrine of collateral estoppel or issue preclusion is designed to prevent this from occurring.

B & B Hardware, Inc. v. Hargis Indus., Inc., 575 U.S. 138, 140 (2015).  That is precisely the situation here concerning what Judge Darvin was asked to decide and what I am asked to decide.

In Maine, importantly for this trial,

> Issue preclusion, or collateral estoppel, prevents the relitigation of factual issues already decided if the identical issue was determined by a prior final judgment, and the party estopped had a fair opportunity and incentive to litigate

> the issue in a prior proceeding. . . . [C]ollateral estoppel
> concerns factual issues, and applies even when the two
> proceedings offer different types of remedies.

Portland Water Dist., 2008 ME 23, ¶ 9, 940 A.2d 1097 (cleaned up).

No one has disputed that Judge Darvin's divorce decree and his later orders amount to a prior final judgment.  And given the contentiousness of the state proceedings, there can be no doubt that each party had a fair opportunity and incentive to litigate the factual issues that Judge Darvin decided both in the divorce decree and in his rulings on contempt and enforcement.

Factual issues Judge Darvin resolved that therefore govern this federal lawsuit are:

1.    Before the divorce, Shannon Auritt engaged in economic misconduct, intentionally seeking to undermine Gary Auritt's showerhead business.  She colluded with her parents to set up a competing company to target Gary Auritt's accounts and attract his customers, a company that marketed itself in a manner purposely designed to cause confusion and to attract customers who would otherwise do business with Gary Auritt's pre-existing business.  Pl.'s Ex. 61, Divorce Judgment at 19.  Judge Darvin identified the business as Take A Shower LLC in a later ruling.  Def.'s Ex. 70, Order on Post Judgment Mots. for Contempt and to Enforce at 2.  Issue preclusion on these factual issues benefits Gary Auritt in this federal lawsuit.

2.    Post-divorce, all the videos Gary Auritt presented to Judge Darvin in connection with his motion for contempt and to enforce

> were created and posted to the Internet before the issuance
> of the divorce judgment.  The videos link to the website and
> the business of TakeaShower [sic] LLC which is owned and
> operated by Shannon's parents.  Other than her appearance

> as a model in the videos (and use of her voice as narrator) there was no evidence presented that Shannon works for, has assisted her parent's in their business or has received any remuneration from her parent's business <u>after</u> the entry of the divorce action.  There was no evidence that Shannon 'owns' these videos or has control over the YouTube channel content.

<u>Id</u>. at 2; Def.'s Ex. 72, Order on Pl.'s Mots. to Alter or Amend Judgment.[8]  Issue preclusion on these factual issues benefits Shannon Auritt in this federal lawsuit.

Before I address the merits of Gary Auritt's unfair competition and trademark dilution claims, I consider the relief he seeks.

### *Damages*

In closing argument, Gary Auritt's lawyer requested economic damages of lost profits of $100,000 per year since 2015, the year of the divorce decree.[9]  Gary Auritt provided no tax returns for either himself or his business, and no financial records for his business to show gross revenue or net profit.  He did testify that in 2015 he was selling 9,000 to 10,000 shower heads per year for an income of $160,000.  His supplier Rick Whedon testified about a number of issues on Gary Auritt's behalf, but Gary Auritt did not elicit any testimony from Whedon about declining wholesale sales to Gary Auritt or Water Management.

---

[8] Although witness Andrew Rosenstein could not testify that all the videos admitted at this federal trial were shown to Judge Darvin on the state court motion for contempt and to enforce, the plaintiff Gary Auritt had every incentive to show Judge Darvin any videos where Shannon Auritt was more than a model and any evidence that she owned or had control over showerhead videos. Gary Auritt presented no evidence that any YouTube videos admitted in this court were posted after Judge Darvin's ruling.

[9] I do not interpret Gary Auritt as seeking relief from this Court for *pre*-divorce misconduct.  <u>See, e.g.</u>, Am. Compl. ¶ 46 (ECF No. 59) ("Since the divorce" the defendants have caused his business to "drastically contract.").  Presumably he recognizes that he obtained relief for pre-divorce misconduct in the divorce decree.

Gary Auritt's only evidence on damages from unfair competition or trademark dilution is based upon the Affidavit of Kathleen Hamilton. Her Affidavit details the gross sales of Take A Shower LLC and describes which of them were attributable to Maine customers.[10] Hamilton did not testify at trial and her statements in the Affidavit are not admissible as evidence. But Gary Auritt testified that the sales her Affidavit described—8,201 sales from 2015 through 2018—were consistent with his observation of declining sales from his business and cost him between $150,000 and $190,000 per year. I am doubtful of that end run around the hearsay rules of evidence, but in any event Gary Auritt produced no evidence to show that those losses were caused by Shannon Auritt as distinguished from Hamilton and Take A Shower LLC. Moreover, issue preclusion prevents Gary Auritt from seeking damages against Shannon Auritt up through Judge Darvin's final ruling on January 29, 2018, because Judge Darvin found that there was no evidence Shannon Auritt was anything more than a model or received any remuneration from her parents' business during that time period. Finally, Gary Auritt has presented no evidence that would allow me as factfinder to determine what his damages were starting on January 30, 2018.

I conclude that Gary Auritt cannot recover damages from Shannon Auritt under his unfair competition and trademark dilution claims.

---

[10] That is because the Affidavit was submitted in support of the motion to dismiss for lack of personal jurisdiction.

*Injunctive Relief*

The critical issue in this case is what injunctive relief, if any, Gary Auritt can recover against Shannon Auritt in the absence of her mother Kathleen Hamilton and Take A Shower LLC from the lawsuit. In Gary Auritt's Amended Complaint and his lawyer's closing argument, he seeks injunctive relief ordering Shannon Auritt to: (1) stop using the name Take A Shower LLC and stop registering the domain name take-a-shower.com; (2) take down from the web the videos that feature Shannon Auritt's image and/or voice.

Judge Darvin found that Shannon Auritt colluded with her parents to undermine Gary Auritt's business and set up the competing business Take a Shower LLC to cause confusion and attract Gary Auritt's customers. But in 2017 and through January 29, 2018, he found that Gary Auritt had presented no evidence to show that Shannon Auritt engaged in misconduct after the divorce decree.

But now it is 2021, and in this trial Gary Auritt has shown that Shannon Auritt *does* have control over her parents' business. Specifically, Shannon Auritt filed amended articles of organization with the Secretary of State on July 19, 2018, to show that she, not Kathleen Hamilton, would become the registered agent and chief executive officer of Take A Shower LLC effective July 23, and that Shannon Auritt's address as CEO was Cape Elizabeth, Maine. Pl.'s Ex. 66. Shannon Auritt did not contest that evidence or introduce any evidence that she lacks control. It is true that Annual Reports filed thereafter show Hamilton restored as chief executive officer and registered agent, not Shannon Auritt, Def.'s Exs. 1-3, but the earlier filings show that Shannon Auritt was able to take

control.  I conclude therefore that Shannon Auritt is currently able to control the competing business Take A Shower LLC that she colluded with her parents to create.

So does Gary Auritt succeed on the merits of his claims of unfair competition and trademark dilution?  Given Judge Darvin's factual findings and Shannon Auritt's assuming control of the business immediately upon the expiration of Judge Darvin's injunction, even if she quickly realized the inadvisability of what she had done and removed her name from the corporate filings, it is obvious that she has been involved in an elaborate shell game to continue to milk the profits from Gary Auritt's showerhead business.  Peculiarly, however, neither party has addressed the elements of Gary Auritt's unfair competition and trademark dilution claims, so I must do so without assistance.

### Federal

On federal unfair competition Gary Auritt mentions what is known as section 43 of the Lanham Act, specifically citing 15 U.S.C. sections 1125(a) and 1125(d).  Section 1116 allows me to grant injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable" to prevent a violation of 1125(a) or (d).

#### Section 1125(a)

Section 1125(a) "creates two distinct bases of liability: false association, § 1125(a)(1)(A), and false advertising, § 1125(a)(1)(B)."  Lexmark Int'l, Inc. v. Static Control Components Inc., 572 U.S. 118, 122 (2014).  Gary Auritt has not specified which he means, but regardless, he must show a likelihood of

14

confusion.   See Pignons S.A. de Mecanique de Precision v. Polaroid Corp., 657

F.2d 482, 493 (1st Cir. 1981).   Gary Auritt's Amended Complaint says:

> Defendant Shannon Auritt in her individual capacity, and
> Take A Shower LLC . . . use the company name "Take a
> Shower LLC" and the bad faith registration of the website
> "take-a-shower.com" in the sale or marketing of shower
> heads to confuse and deceive purchasers of shower heads
> who are diverted to the Take A Shower LLC website and
> believe that Plaintiff Gary Auritt is somehow affiliated or
> connected with Defendant.

Am. Compl. ¶ 54 (ECF No. 59).   His trial brief says "Shannon Auritt has used her

mother's Florida shower head business, Take A Shower LLC, as a front to divert

business from his shower head website, takeashower.com.   Since 2014, Plaintiff

Gary Auritt . . . has the federally registered trademark 'takeashower.com'."   Pl.'s

Trial Br. at 1-2 (ECF No. 167).

Judge Darvin found:

> Shannon Auritt committed economic misconduct through a
> pattern of behavior designed to undermine the business.
> First, the court finds that Shannon removed specialized
> tools, equipment and business data and records from the
> marital home during a time she had exclusive possession of
> the home.   These tools, equipment and records related to the
> business were essential to its functioning.   Then, Shannon
> colluded with her parents to disrupt the business and to
> diminish the income of the business by setting up a
> competing company. These acts were done in a calculated
> and malicious manner designed to cause financial harm to
> the business and to Gary Auritt.   The competing business
> has developed and manufactured the same or very similar
> products (shower heads), targeted the large customer
> accounts relied upon by Gary Auritt, and has marketed itself
> in a manner purposely designed to cause confusion and to
> attract customers who would otherwise do business with
> Gary Auritt's pre-existing business.   The court specifically
> finds that the testimony of Shannon Auritt regarding the
> establishment and operation of the business is not credible.

Pl.'s Ex. 61, Divorce Judgment at 19.   Judge Darvin also stated:

> Shannon Auritt asked the court to believe that her parents,
> who retired at age 49, decided on their own to go into the

> shower head business in direct competition with Gary Auritt
> following their separation without her involvement.   She
> acknowledges 'helping out' her parents, but otherwise
> maintains that it is 'their business' and that she essentially
> volunteers only limited assistance to them.   *None of this is
> credible.*

Id. at n.5 (emphasis added).

In determining likelihood of confusion, I apply the First Circuit's list of eight non-exclusive Pignons factors: "(1) the similarity of the marks; (2) the similarity of the goods; (3) the relationship between the parties' channels of trade; (4) the relationship between the parties' advertising; (5) the classes of prospective purchasers; (6) evidence of actual confusion; (7) the defendant's intent in adopting its mark; and (8) the strength of the plaintiff's mark." Oriental Fin. Grp., Inc. v. Cooperativa de Ahorro y Crédito Oriental, 832 F.3d 15, 25 (1st Cir. 2016); see Pignons, 657 F.2d at 487.   Judge Darvin's findings pretty much resolve all of these, but I will address them separately.

(1)   Take A Shower LLC and take-a-shower.com are highly similar to the plaintiff's mark, takeashower.com.

(2)   The goods are very similar; both companies advertise that their shower heads are for low water pressure and both use the phrase "fire hydrant" to describe their products.

(3), (4), and (5)   Considering these three related factors together, see Boston Duck Tours, LP v. Super Duck Tours, LLC, 531 F.3d 1, 25 (1st Cir. 2008), I find that the parties compete in the same realm (the internet) for the same customers.

(6)   The plaintiff has presented evidence of actual confusion.   He testified that he first became aware of the competitor's YouTube videos around 2016-

16

2017, when he began getting phone calls from confused customers saying they had seen his products on Amazon.com.[11]    Gary Auritt had never sold on Amazon.com.

(7)  I conclude that Shannon Auritt operated in bad faith.  Judge Darvin found that Shannon Auritt "colluded with her parents to disrupt . . . and to diminish the income of [Gary Auritt's] business by setting up a competing company."  Among other things, he found the competing business "marketed itself in a manner purposely designed to cause confusion and to attract customers who would otherwise do business with Gary Auritt's pre-existing business."  Pl.'s Ex. 61, Divorce Judgment at 19.  Further, the plaintiff has shown that two days before the divorce judgment's injunction was set to expire, Shannon Auritt briefly named herself CEO and registered agent of Take a Shower LLC, which shows her ongoing capacity to take control.  Pl.'s Ex. 66.  Several of the advertising videos on YouTube feature Shannon Auritt or her voice and direct viewers to sellers other than Gary Auritt.  In at least one of the videos, Shannon Auritt says "take-a-shower.com."[12]  Those videos remain online.

(8)  Gary Auritt has been using the domain name takeashower.com since the mid-to-late '90s and registered it as a federal trademark in 2014.  He has had the name stamped on the showerheads he sold.

I conclude that a likelihood of confusion exists.

---

[11] Whether such evidence is hearsay is debatable, but I follow the majority rule that Gary Auritt's testimony about the phone calls is admissible to show the customers' confusion.  See 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 23:15 (5th ed. 2021).
[12] Throughout the trial, I tried to clarify for the benefit of the court reporter whether the witnesses were referring to Gary Auritt's takeashower (without hyphens) or the competitor's take-a-shower (with hyphens) and the corresponding websites.

Section 1116(a) enables me to grant an injunction where the "principles of equity" warrant.   To obtain a permanent injunction Gary Auritt must show: (1) "actual success on the merits"; "(2) that [he] would suffer irreparable injury if injunctive relief were not issued; (3) that such injury outweighs any harm that would stem from granting injunctive relief; and (4) that the public interest weighs in [his] favor."   Largess v. Sup. Jud. Ct. for State of Mass., 373 F.3d 219, 223 n.2 (1st Cir. 2004).

Gary Auritt succeeds on the merits and will suffer irreparable harm to his business should an injunction not issue.   A legal remedy of damages would be inadequate because there has been no evidence that Shannon Auritt has assets or has received income from the business.   Def.'s Ex. 70, Order on Post Judgment Mots. for Contempt and to Enforce at 2.   The balance of hardships weighs in Gary Auritt's favor because he has demonstrated harm, while there is no evidence that Shannon Auritt will suffer harm from an injunction.   Finally, the public interest is served by reducing consumer confusion.   See Mercado-Salinas v. Bart Enters. Int'l, Ltd., 671 F.3d 12, 24 (1st Cir. 2011).

Gary Auritt's relief is not mooted by the fact that Shannon Auritt is no longer listed as CEO of Take A Shower LLC.   Shannon Auritt's past conduct of deceit and efforts to undermine Gary Auritt's business demonstrates a likelihood of recurrence, and she has not provided proof to the contrary.   See United States v. Or. State Med. Soc'y, 343 U.S. 326, 333 (1952) ("When defendants are shown to have settled into a continuing practice or entered into a conspiracy violative of anti-trust laws, courts will not assume that it has been abandoned without clear proof."); see also Allee v. Medrano, 416 U.S. 802, 810-811 (1974) ("[A]n

18

action for an injunction does not become moot merely because the conduct complained of has terminated, if there is a possibility of recurrence, since otherwise the defendants 'would be free to return to . . . (their) old ways.'" (quoting <u>Gray v. Sanders</u>, 372 U.S. 368, 376 (1963)).

I conclude therefore that injunctive relief is appropriate for the federal section 1125(a) violation[13]—to prevent Shannon Auritt from using or continuing to register take-a-shower.com as a domain name and from using the name Take A Shower LLC as the name of the business, and to order her to take down the YouTube videos either directly or through the LLC.  I also agree with Judge Darvin that injunctive relief should prevent Shannon Auritt from any action that assists her parents, whether as a volunteer or for paid remuneration, in the use of the names or the videos.[14]  The text of the injunction appears at the end of these findings of fact and conclusions of law.  Judge Darvin found that Shannon Auritt colluded with her parents to disrupt Gary Auritt's business.  Shannon Auritt's parents should be placed on notice by their counsel in this lawsuit and by the defendant Shannon Auritt that this injunction prevents activity not only by Shannon Auritt, but also by "other persons who are in active concert or participation with" Shannon Auritt.  Fed. R. Civ. P. 65(d)(2)(C).  As such, no person, including her parents, may assist Shannon Auritt in activities that would violate this injunction.

---

[13] Because I conclude that Gary Auritt is entitled to a permanent injunction on his 15 U.S.C. § 1125(a) claim pursuant to section 1116, I do not reach his section 1125(d) claim.  Nor do I assess his state law claims.  The federal analysis is sufficient.  Further, the Maine Law Court has not elaborated on the elements of Gary Auritt's 15 M.R.S.A. §§ 1212 and 1530 claims, and it is not for me as a federal judge to develop that law here.  <u>See</u> <u>Phoung Luc v. Wyndham Mgmt. Corp.</u>, 496 F.3d 85, 88-89 (1st Cir. 2007).

[14] Although Judge Darvin's injunction issued in the context of the divorce, I draw from his findings and approach in this unfair competition action.

**Attorney Fees**

I **DENY** Gary Auritt's request for attorney fees as an exceptional case in light of the outcome of this trial.

<b>CONCLUSION</b>

I am **GRANTING** an injunction, but the likelihood of Gary Auritt successfully enforcing it remains problematic until he heeds Judge Darvin's advice in the 2017 Order:

> The court understands why Gary is upset with the competition directed against him since he reports that it has dramatically cut into his business and reduced his income. While his frustration and anger against Shannon's parents is reasonable, it is not clear why he has not followed through with direct legal action against the parents and their business. Gary's real complaint is with the TakeaShower [sic] business that is directly competing with him.

Def.'s Ex. 70, Order on Post Judgment Mots. for Contempt and to Enforce at 3, Dec. 28, 2017.[15]   Gary Auritt did initially sue Shannon's mother Kathleen Hamilton and the business Take A Shower LLC as part of this federal lawsuit. But when they moved to dismiss for lack of personal jurisdiction, he advanced no evidence in opposing their motion and this Court was compelled to grant their motion. Gary Auritt will do no better in enforcing the *federal* injunction than he did the state injunction until he finds a way to make them parties in his search for relief. But I also warn Shannon Auritt that her shell game over who is unfairly competing with Gary Auritt must end.

---

[15] Judge Darvin reiterated the advice in an October 11, 2018, order. See Def.'s Ex. 75, Order on Post-Hr'g Mots. to Reconsider, Reopen, Enforce & for Contempt at 2.

Judgment will be entered for the plaintiff for the following injunctive relief[16] but in all other respects, judgment is for the defendant.

### Text of Injunction

Shannon Auritt is hereby enjoined from assisting Take A Shower LLC, and/or current or future related companies in any activities that infringe Gary Auritt's trademark, takeashower.com.  These activities include use or monitoring of the website take-a-shower.com, as well as any websites take-a-shower.com redirects to; using the phrase "take a shower," with or without hyphens, in advertising videos and printed on merchandise.

Shannon Auritt must also, both directly and through Take A Shower LLC, seek removal of all advertising videos using her image and/or voice.

This injunction covers any action, paid or volunteer, by Shannon Auritt in assisting her parents in the marketing, development, or selling of shower heads that infringe Gary Auritt's trademark, takeashower.com.

**So Ordered.**

**Dated this 30th day of August, 2021**

/s/D. Brock Hornby
**D. Brock Hornby**
**United States District Judge**

---

[16] I received no assistance from the parties on crafting the terms of the injunction.  But I have followed the requirements of Rule 65(d).